26 U.S. 469 (____)
1 Pet. 469
DOE ON THE DEMISE OF JOHN A. ELMORE, PLAINTIFF IN ERROR,
vs.
WILLIAM A. GRYMES, AND JOHN J. BEATIE, DEFENDANTS IN ERROR.
Supreme Court of United States.

*470 The case was argued by Mr. Wild and Mr. M'Duffie for the plaintiff in error, and by Mr. Berrien for the defendant.
Mr. Berrien. &mdash.
Mr. Wilde and Mr. M'Duffie, for the plaintiff in error. &mdash.
*471 Mr. Chief Justice MARSHALL delivered the opinion of the Court. 
The Court has had this case under its consideration, and is of opinion that the Circuit Court had no authority to order a peremptory nonsuit, against the will of the plaintiff. He had *472 a right by law to a trial by a jury, and to have had the case submitted to them. He might agree to a nonsuit; but if he did not so choose, the Court could not compel him to submit to it. But the state of the record does not enable this Court to render a final judgment, because the record is defective, in not showing a judgment of nonsuit, entered in the Circuit Court. Although the bill of exceptions states that fact yet the record does not contain the judgment itself.
The plaintiff may therefore apply for a certiorari, to bring up a perfect record, or dismiss the present writ of error and proceed anew; as his counsel may think best for the interest of their client.
Mr. Justice JOHNSON dissentiente 
The only question of any importance in this cause, is, whether a Circuit Court can, in any case, order a plaintiff to be nonsuited. I ordered the plaintiff below to be nonsuited, because the evidence was so inadequate to maintain his suit; but had the jury found for him, I should have set aside the verdict, and ordered a new trial. The practice of the Court from which this cause comes up, is this; when the plaintiff has closed his evidence, the defendant is at liberty to move for a nonsuit, or proceed with his testimony. If he introduces evidence, it is too late to move for a nonsuit; and the question always to be examined is, whether upon the evidence introduced by the plaintiff, admitting it to be true, the jury can find a verdict for him. So that, it is in fact, a substitute for a demurrer to evidence, or for a motion for instruction, that the plaintiff cannot recover, upon the case made out by him in evidence.
There are several reasons, why I must maintain that the Courts of the sixth Circuit have a right to exercise the power to order a nonsuit, even against the will of the plaintiff; and why it would be wise, in all our Circuits, to introduce the same practice.
It happens unfortunately for the defendant in error here, that a majority of the Judges of this Court have pursued a different practice in their Circuits; but this, I must insist, is no sufficient reason for subverting, otherwise than by rule, the practice of other states in which this right has been recognised in the administration of justice, coevally with the existence of their Courts. Such has been the case in the states of which the sixth Circuit consists, and the Acts of 1789 and 1792, have adopted into the Courts of the United States, of the respective Circuits, not only the forms of process, but the "modes of proceeding," in suits known to the states respectively. That this comes under the denomination of a mode of proceeding, or in other words, an established practice of the state composing the sixth Circuit, appears to me incontrovertible.
*473 By what right then can this Court reverse a judgment of that Circuit, founded in a practice thus sanctioned by law? It does seem to me, that the defendant below has a right in this judgment, vested by express statute law, and ought not to be put to the expense of this reversal. For what purpose is power given to this Court to alter the practice of the Circuits, by such regulations as they may deem expedient, if such practice is not to be held legal, until altered by a rule of this Court?
This Court surely does not mean to decide, that such was not the received practice of that Circuit; this would be a decision in the teeth of positive fact; and if the purport of the decision be, that it is an illegal practice, the immemorial practice itself, and the Process Acts of the United States, furnish an express negative, to such a decision.
The idea seems to be, that it is a practice inconsistent with the relation in which our Circuit Courts stand to this Court  that ours is not a Nisi Prius system, or something to that effect. What then? This Court can alter the practice by a rule, but, to overturn a judgment, that has already been rendered under such a practice, I must respectfully contend, approaches very near to ex post facto legislation, not adjudication; the province of which is to operate only upon existing laws. But it is not a practice appropriate exclusively to a Nisi Prius system, as is proved by this, that writs of error are sued out continually in England, upon judgments, on nonsuits, (see the cases cited in 1 Archb. Practice, 229-30,) and, though it had been, the states were at liberty to adopt it into their practice, although the Nisi Prius system be unknown to them. That they had adopted it, is conclusive against this assumed incompatibility. And in practice it subserves the purposes of justice under our system, as effectually as a bill of exceptions, or a demurrer to evidence; and in several respects much better. It saves the practitioner from the weight of responsibility, which often results from being compelled to elect between a voluntary nonsuit, and a demurrer to evidence, or a bill of exceptions, which may terminate fatally to his client; and it not unfrequently saves his client from the fatal effects of negligence and misapprehension, either of himself or his attorney, or from surprise.
In point of convenience and expedition, in the administration of justice, I presume there cannot be two opinions. On this point, as far as exemption docet, we may cite Great Britain, Massachusetts and New-York, with some confidence, against Pennsylvania, Maryland, and Virginia.
But, it is contended, that in England the plaintiff is not nonsuited, if he insists on answering when called. If the fact be admitted, what then? England is not altogether absolute in dictating to the Courts of the United States, and if those of the *474 states of the sixth Circuit, have asserted some independence in their rules of practice on this subject, I presume their right was unquestionable to do so.
But I want no other authority than the Courts of Great Britain, to justify the practice of the sixth Circuit, in this behalf. From the earliest period we find the English Courts, in the exercise of this power, and whoever will examine the cases collected in Mr. Morgan's Treatise on the doctrine of new trials, (3 vol.Essays,) will find, what a very wide range has been taken by those Courts in the application of that practice. Nor have the more modern cases manifested any inclination to retrace their steps. Its salutary effects are universally felt, and perhaps contribute as largely as any other cause to the rapid progress of their Courts in disposing of their dockets. If there exists any case prior to that of Macbeth vs. Haldeman, 1 Term R. 172, in which the right of the plaintiff to refuse to be nonsuited was recognised, I cannot recollect it; since in that case it would seem that in ordinary cases the right is recognised. But there is abundant proof that the British Courts do assert the power to control the exercise of that right, by the plaintiff, when they think proper. In the cases of change of venue, on motion of plaintiffs, 3 Black. 1031, the right is disputed, on the assumed ground that he undertakes to prove some material fact. Now, where can be the objection to applying the same reason to every case that goes to a jury? Does not a plaintiff, in fact, undertake the same thing whenever he troubles a Court with his suit, and has a jury sworn to try his cause upon evidence? he is no longer subjected to amercement if he fails to recover, and the right to nonsuit him, where he fails to produce evidence that will justify a verdict, is but a reasonable substitute for the absolute penalty to which he was once subjected.
But it is contended that an absurdity is produced, and an acknowledged right violated. Yet the alternative exhibits a more direct and obvious absurdity, since in the case of Macbeth vs. Haldeman, and in every case of the kind, the Court asserts a positive control over the consciences of the jury, by telling them, "they are bound to find for the defendant." And the greater absurdity must henceforward be incurred, of swearing a jury in a cause, and requiring a verdict at the caprice of a plaintiff, who produces not a title of evidence to maintain his issue. Nor is any right of the plaintiff taken from him, if his rights be regarded in their just extent. He cannot claim a verdict of the jury if he does not produce evidence to sustain it, and it is only in that case that he is precluded from submitting his case to their consciences. When we consider what were the ancient penalties for a false verdict, before they were superseded by the introduction of new trials; it must appear just *475 and reasonable, that the plaintiff should rather be exposed to the necessity of bringing a new suit, or moving for a new trial, than that the jury should be subjected to attaint, at his will. And on the subject of fiction, and legal absurdity, it is certainly too late at this day for our Courts of Justice to be very fastidious, on a consideration which has been so thoroughly set at nought, by the action of ejectment, fine and recovery, and sundry other, matters of the kind; to which they have resorted for the purposes of substantial justice and public convenience.
I must submit, I suppose, but I cannot do it without protesting against the right of forcing upon my Circuit, the practice of other Circuits in this mode.
By a rule of this Court, it is, unquestionably, in the power of the Court to do it. But until then, I can never know what is the practice of my own Circuit; until I come here to learn it.